IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROXIE A. BROWN                      :
                                    :
v.                                  :       Civil Action WMN-03-1866
                                    :
KEITH B. ALEXANDER, Director        :
NATIONAL SECURITY AGENCY            :
                                    :

<u>MEMORANDUM</u>

Before the Court is Defendant's post-discovery motion to
dismiss, or in the alternative, for summary judgment.  Paper No.
77.  The motion is ripe for decision.  Upon a review of the
pleadings and applicable case law, this Court determines that no
hearing is necessary (Local Rule 105.6) and that Defendant's
motion will be granted.

**I.  BACKGROUND**

Plaintiff Roxie Brown worked at the National Security Agency
(NSA) for approximately thirty five years before accepting early
retirement in March of 2001.  In late 1998 or early 1999,
Plaintiff began working as a Instructor/Developer in the National
Cryptologic School.  Beginning in 1999, Plaintiff participated as
a supporting witness in an Equal Employment Opportunity (EEO)
proceeding brought by a co-worker alleging age discrimination by
the NSA.  Shortly after being deposed in the EEO matter,
Plaintiff alleges multiple changes in her working conditions
imposed as retaliation for her testimony that was unfavorable to
the NSA.  Plaintiff asserts that her employment conditions became

so intolerable that her retirement decision should actually be considered a constructive discharge.

Soon after leaving the NSA, Plaintiff complained to the Equal Employment Opportunity Commission (EEOC), which commenced an investigation, but never held a hearing in the matter.  The five count complaint in the instant suit was filed in this Court on June 24, 2003, asserting claims for: (1) retaliation under 42 U.S.C. § 2000e et seq.; (2) constructive discharge under 42 U.S.C. § 2000e et seq.; (3) retaliation and constructive discharge under 42 U.S.C. § 1981a; (4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress.  On November 21, 2003, Defendant filed a motion for summary judgment.  On May 25, 2004, in denying Defendant's November 21, 2003, motion for summary judgment, the Court dismissed counts four and five and allowed the Plaintiff discovery around select issues "to properly develop whether either allegation could be reasonably construed as an adverse employment action."  Paper No. 34.  Discovery has been completed and Defendant now brings a post-discovery motion for summary judgment.

## II.  LEGAL STANDARD

A court considers only the pleadings when deciding a motion to dismiss.  If matters outside the pleadings are presented and not excluded, the motion must be considered under the summary

2

judgment standard of Fed. R. Civ. P. 56.  See Villeda v. Prince George's County, Md., 219 F. Supp. 2d 696, 698 (D. Md. 2002).  In this case, the parties have submitted matters outside the pleadings and the Court has considered these matters. Defendant's motion shall be considered a motion for summary judgment and decided accordingly.

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For purposes of summary judgment, a dispute about a fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if, when applied to the substantive law, it affects the outcome of litigation.  Id.

A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's cause of action which it believes demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant demonstrates there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law, the non-moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence

3

which demonstrates that a triable issue of fact exists for trial.
Id. at 324.  The non-moving party is entitled to have "all
reasonable inferences . . . drawn in its respective favor."
Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1129 (4th Cir.
1987).

**III. DISCUSSION**

A.  Retaliation

A plaintiff establishes a prima facie case of retaliation by
showing: "(1) that [she] engaged in a protected activity; (2)
that [her] employer took an adverse employment action against
[her]; and (3) that a causal connection existed between the
protected activity and the asserted adverse action."  King v.
Rumsfeld, 328 F.3d 145, 150-151 (4th Cir. 2003).  Defendant
argues that Plaintiff's prima facie case is fatally deficient
under the second and third prongs.  First, Defendant asserts that
the actions complained of by Plaintiff do not qualify as adverse
employment actions.  Next, Defendant argues that Plaintiff has
not established a causal connection between the actions
complained of and her participation in protected activity.

"An adverse employment action is a discriminatory act which
adversely affects the terms, conditions, or benefits of the
plaintiff's employment."  James v. Booz-Allen & Hamilton, Inc.,
368 F.3d 371 (4th Cir. 2004) (internal quotations and citations
omitted).  In her Complaint Plaintiff alleges that multiple

negative actions were taken by her supervisors to punish her for
her EEO testimony.  In its Motion, Defendant argues that these
instances do not constitute adverse actions.[1]  In her Opposition
Plaintiff argues that "NSA mischaracterizes . . . the incidents
[Plaintiff] maintains as 'adverse actions.'" Opp'n 46.  Plaintiff
contends that "the adverse action is that on February 26, 2001,
[Plaintiff] was reprimanded and <u>fired</u> from her organization
publicly by Susan C.[2] (Plaintiff's first-line supervisor since
2001) for helping a colleague." <u>Id.</u> 47.  In addition, Plaintiff
seems to suggest a second instance of adverse action occurred
when Plaintiff was wrongly subjected to discipline in the form of
being docked Leave Without Pay (LWOP), being classified as Absent
Without Leave (AWOL), and the application of a Use of Leave

---

[1]<u>See</u> Def.'s Mem. 27 (listing Plaintiff's assertions that her
supervisors punished her by: "(1) decreasing the volume of her
work-load; (2) telling her 'stay out' of and let others handle a
matter involving allegations of work-place theft; (3) requesting
that she produce a description of her job responsibilities and
skills but providing no feed-back on what she provided; (4)
publicly chastising her for assisting a colleague who had a
problem with retrieving an airplane ticket for a work-related
European trip; (5) not considering her for the position of Acting
Chief of E42; (6) requiring her to produce a medical note to
verify her March 7, 2001 through March 9, 2001 use of sick leave;
(7) issuing her a memorandum regarding the use of sick leave; (8)
reporting her, for payroll purposes, as absent without leave and
in a leave without pay status for her March 7, 2001 through March
9, 2001 use of sick leave; and (9) communicating with her
counselor in the Employee Assistance Program ("EAS") about her
EAS visits.").

[2] The parties have, for the most part, redacted the last
names of Plaintiff's co-workers.  The Court will do the same and
only reference the first initial of the last name.

Memorandum when she allegedly had not misused sick leave nor had she violated protocol or notification requirements.  Id. 48.[3] Lastly, Plaintiff insinuates that Plaintiff's lack of work and the failure of her supervisors to find her "another spot" in accordance with NSA policy upon her request for additional work constitutes a third instance of adverse action.  Opp'n 50.

The Court notes that in its denial of Defendant's November 21, 2003, motion for summary judgment it stated:

> Although Defendant vociferously denies that Plaintiff has sufficiently articulated discoverable facts that could allow her to survive the present motion for summary judgment, the Court is persuaded otherwise. Plaintiff clearly alleges that her supervisor, Susan C., in the midst of a verbal altercation, told her to "find a job elsewhere." Plaintiff also claims that she did not receive the opportunity to apply for the supervisory position for which Susan C. was selected. [The Court] allowed discovery around these issues to properly develop whether either allegation could be reasonably construed as an adverse

---

[3] On March 7, Plaintiff went home early from work due to illness.  She remained home sick on March 8, and returned to work on the 9th.  On March 12th, Susan C. presented Plaintiff with a Use of Leave Memorandum containing a verbal reprimand and told Plaintiff that she was going to charge Plaintiff AWOL for the sick leave she had taken the previous week unless Plaintiff brought in a doctor's note.  Brown Dep. 310.  Plaintiff was docked 19 hours of AWOL for the week of March 5th.  Id. Subsequently, Plaintiff presented medical documentation for the absence which was accepted by Susan C., and Plaintiff's AWOL designation was converted to sick leave.  Susan C. Dep. 5. Plaintiff does not argue that her AWOL designation was not later removed.  Plaintiff contends that the use of the AWOL designation and the Use of Leave Memorandum were unusually harsh actions to be taken in response to the circumstances.  Opp'n 48-49.

employment action.

Paper No. 34 (emphasis added).  Plaintiff no longer contends that the lack of opportunity to apply for the supervisory position constitutes adverse action and her arguments that adverse action was taken when she was wrongly disciplined for her use of leave and when she was denied work have already been rejected by this Court.[4]  Thus, whether Plaintiff can meet the second element of her retaliation claim hinges on whether the alleged "firing" incident constitutes adverse action.[5]

The facts surrounding the "firing" incident are as follows. On February 21, 2001, one of Plaintiff's co-workers, Tara W.,

---

[4] In addition, the discovery process has confirmed that neither the AWOL incident nor the alleged lack of work rise to the level of adverse action.  First, once Plaintiff produced the required medical documentation these designations were converted to sick leave and Plaintiff suffered no unremedied employment action.  See Susan C. Dep. 159.  A plaintiff does not suffer an adverse employment action when the potentially actionable adverse action is corrected prior to the commencement of suit.  Taylor v. Small, 350 F.3d 1286, 1294 (D.C. Cir. 2003).  Second, the alleged work load decrease does not constitute an adverse action because the rank, pay, or benefits of the position were not materially changed.  See Hoffman v. Rubin, 193 F.3d 959, 964 (8th Cir. 1999).  Additionally, Defendant has offered a legitimate non-discriminatory reason for the decrease in work, which Plaintiff herself admitted - that due to an ongoing needs assessment conducted by the Directorate of Central Intelligence all of the collection management courses, which Plaintiff taught, were pulled from the curriculum.  See Brown Dep. 55.  Plaintiff has failed to show that this reason is merely a pretext.

[5] The Court notes that constructive discharge can be considered adverse action but, as discussed below, the actions complained of by Plaintiff fail to rise to the level of a constructive discharge.

contacted her saying that she was stranded in Eastern Europe
without a return ticket.  Plaintiff made calls to United,
Lufthansa, the Special Security Operations at NSA, and to NSA's
Travel office.  Brown Dep. 144.  She made travel arrangements for
Tara W. and notified Deb W., her second-line supervisor, of what
had transpired.  <u>Id.</u> 145.  Deb W. told her to keep Susan C. in
the loop and Plaintiff sent Susan C. an email relaying the events
concerning Tara W.'s travel.  Susan C. replied to the email
telling Plaintiff that if Tara W. calls again to "turn it over to
the Travel folks or someone from SSOC," that "it is not
[Plaintiff's department's] responsibility to take care of [it]."[6]
<u>Id.</u> 149.  Five days later Plaintiff responded to Susan C.'s email
in writing:

> Susan, I only let you know about this as a
> courtesy to you since you are suppose[d] to be
> her supervisor.  Glad to see the concern on
> your part.
>      I would never drop the ball and let one of
> my colleagues or coworkers stranded anywhere.
> If this is a problem for you, I suggest that
> you take it to DEB or higher.  I have no
> intention of letting Tara down.
>      TRAVEL has been in the loop since she
> departed BWI.  Please consider this situation
> resolved.
>      This is a real non-HUMAN RELATIONS-LIKE

---

[6] The email stated: "[R]oxie, if Tara calls you, please let
me know because we need to turn it over to the travel folks or
someone from SSOC. [I] know that you are concerned about Tara as
a colleague and friend but it is not our responsibility to take
care of this. [I]t is fine to stay in the loop but travel and
SSOC need to be taking action on this, not e4. [S]usan."  Def.'s
Ex. 14.

```
          ATTITUDE WHICH I CARE NOT TO ADOPT.
              And, a real indication of what to expect
          from E4, or is that what not to expect?  Thanks
          for the insight.  Roxie A. Brown.
```

Def.'s Ex. 14.

On the same day Plaintiff sent her email response, Susan C.
entered Plaintiff's cubicle to confront her about the email.
Brown Dep. 167.  According to Plaintiff, during this
confrontation, Susan C. told her that it was not E-4's
responsibility to do travel's work or SSOC's work and to
"consider yourself reprimanded."  <u>Id.</u>  During the discussion,
Plaintiff stated, "if this is how you take care of your
employees, then I don't think I can work here."  <u>Id.</u>  Susan C.
replied by saying, "Fine.  Then I suggest you find a job
elsewhere."  <u>Id.</u>

Adverse employment action includes "ultimate employment
decisions."  <u>Von Gunten</u>, 243 F.3d at 866.  In her own deposition,
Plaintiff contends that at the time of the exchange with Susan C.
she thought she was "fired."  Brown Dep. 167.  Andrew T., who
overheard the conversation, said that he thought Plaintiff was
fired.  Andrew T. Dep. 117.  Victoria P., who also overhead the
conversation, said that if she were told by her supervisor that
she could find a job elsewhere she would think that she was
fired.  Victoria P. Dep. 186-87.  In addition, in her deposition,
Susan C. stated, "if a subordinate was told to look for a job
elsewhere, I would hope that they would take it seriously."

Susan C. Dep. 74.

Following the confrontation, however, Plaintiff sent an email to her superiors stating that she would be seeking employment elsewhere, not because she was fired, but because it would be best for her and Susan C. and that she would let her employer know when she found employment elsewhere.[7]  Pl.'s Ex. 22.  Plaintiff continued to go to work after the February 26, 2001, incident until she finalized her retirement paperwork on March 26, 2001.[8]  Brown Dep. 285.

Plaintiff's allegations do not support a finding of adverse

---

[7] On February 26, 2001, after the conversation with Susan C., Plaintiff sent an email to Deb W. in which she stated:

> After discussion with Susan C. regarding Tara W. . . . , and her email discussing [the same]. . . . I think that it is in the best interest of myself and Susan that I do not work in E4. I will not work in an organization which fails to support their workers, either while they are at HQ NSA or TDY.  If anyone I work with needs help from me while they are TDY or sitting across from me, I will continue to help them. I am seeking vacancies else where, and I will inform you when I have found a job outside of 'E.'

Pl.'s Ex. 22.  The Court notes that at 9:04 a.m. that morning in the reply email sent from Plaintiff to Susan C., Plaintiff ended the email by stating, "I have a job interview at 1300 today.  I will be leaving for HQ at 1230.  I will inform you of when I will be leaving E-4."  Pl.'s Ex. 4.

[8] On February 28, 2001, Plaintiff forwarded her co-workers an email announcing an incentive for employees to retire early; it was a notice for an "early out and buy out" announcement for the month of March 2001.  Id. 171-72.  In the email, Plaintiff wrote, "I'M GONE."  Id.

action.  "Adverse employment action includes any retaliatory act
or harassment if, but only if, that act or harassment results in
an adverse effect on the terms, conditions, or benefits of
employment."  <u>Von Gunten v. Maryland</u>, 243 F.3d 858, 866 (4th Cir.
2001).  In <u>Munday v. Waste Management of North America, Inc.</u>, the
Fourth Circuit reversed the District Court and held that an
employer's instructions to its employees to not socialize with
the employee alleging retaliation and to avoid her as much as
possible did not constitute adverse action because there was no
evidence that the terms, conditions, or benefits of her
employment were adversely affected.  126 F.3d 239, 241, 243 (4th
Cir. 1997).  Defendant argues that similar to <u>Munday</u>, the action
of which Plaintiff in the present case complains, does not rise
to the level of adverse employment action because the
confrontation did not modify the terms, conditions, or benefits
of her employment.  The Court agrees.

Plaintiff fails to allege how the confrontation with Susan
C. adversely effected the terms, conditions, or benefits of her
employment.  Threats to terminate an employee that are never
carried out and do not affect the terms, conditions, or benefits
of the employee's employment are not adverse actions.  <u>Newby v.
Whitman</u>, 340 F. Supp. 2d 637, 663 (D. N.C. 2004); <u>See also</u>
<u>Buttner v. Eastern Arch Coal Sales Co.</u>, 216 F.3d 707, 712, 715
(8th Cir. 2000) (finding that although there was some dispute as

11

to whether the plaintiff was fired during a confrontation with her supervisor this altercation did not amount to adverse action because no evidence was offered that the confrontation resulted in any material changes to plaintiff's employment – she did not leave her employment, nor did she lose any pay or other benefits as a result of the action); Soto v. John Morrell & Co., 285 F. Supp. 2d 1146, 1177 (D. Iowa 2003) (refusing to deem threats of termination as adverse action where no tangible alteration of job responsibilities resulted from the threats).  In the present case, Plaintiff's mere classification of the confrontation as "a firing" does not elevate it to the level of an adverse action.[9] There is no indication that Plaintiff's employment was actually terminated as a result of this incident and Plaintiff does not allege that the terms, conditions, or benefits of her employment were altered because of the incident.[10]

Because the Court finds that the adverse action prong of Plaintiff's retaliation claim is not met, the Court need not decide whether Plaintiff has set forth facts sufficient to show causation, the third element of retaliation.

---

[9] Plaintiff, interestingly, did not mention in her Complaint that as a result of this incident she thought she was fired.

[10] In the context of constructive discharge Plaintiff alleges that she was docked pay and was charged as AWOL in the weeks following the confrontation with Susan C.  As previously discussed in footnote 3, these actions were remedied prior to Plaintiff's filing suit and thus do not constitute adverse action.  See Taylor, 350 F.3d at 1294.

12

B.  Constructive Discharge

"In order to prevail on her claim of constructive discharge, plaintiff must prove two elements.  She must demonstrate both that the defendant's alleged actions were deliberately done, with the intent to force her to quit, and that her working conditions were in fact intolerable." Overstreet v. Calvert County Health Dep't, 187 F. Supp. 2d 567, 573 (D. Md. 2002).  Plaintiff alleges that, "[t]he sequence of events that [Plaintiff] faced from her 'firing' on February 26, 2000 to being docked pay, charged as AWOL, and being handed a Use of Leave Memorandum based on no more than hearsay, suggests a deliberateness of action and a calculated effort to pressure [Plaintiff] into leaving NSA." Opp'n 51.

The Court notes, as it did previously in footnotes 2, 3, and 7, that once Plaintiff produced the required medical documentation these designations were converted to sick leave and Plaintiff suffered no unremedied employment action.  Susan C. Dep. 159.

Plaintiff has not shown that Susan C. or any of her other supervisors acted deliberately with the intent to force her from her job.  "Deliberateness can be demonstrated by actual evidence of intent by the employer to drive the employee from the job, or circumstantial evidence of such intent, including a series of actions that single out a plaintiff for differential treatment." Rankin v. Greater Media, 28 F. Supp. 2d 331, 341 (D. Md.

13

1997) (internal quotations and citations omitted).  Plaintiff
does not provide actual evidence of intent but relies on
circumstantial evidence of such intent, in arguing that the Use
of the Leave Memorandum, AWOL charge, and docked pay were all
examples of actions that singled out Plaintiff for differential
treatment.  Plaintiff has failed to show that she was singled
out.  Plaintiff does not refute that under NSA policy medial
documentation may be requested for absences of less than three
days when sick leave misuse is suspected.  Def.'s Ex. 20 at 88.
Susan C. requested that Tara W. complete leave forms when seeking
sick leave of three or more days.  Def.'s Ex. 12.  Plaintiff has
not shown that the request for documentation arose out of
anything other than Susan C.'s belief that Plaintiff was
potentially misusing sick leave and, as such, Plaintiff has
failed to show that she suffered differential treatment.

Assuming Plaintiff had shown differential treatment,[11] she
has failed to present evidence of the existence of intolerable
working conditions.  "The intolerability of work conditions is
evaluated in terms of whether a reasonable person would find them
so and thus be forced to resign."  <u>Bristow v. The Daily Press,</u>

---

[11] In her deposition, Victoria P. stated that in her opinion
Plaintiff was treated different after her testimony in the EEO
matter.  Victoria P. Dep. 164, 212.  Specifically, she was
subject to "harassment by management," including, management
would stress the fact that she was not there and required
preapproval of Plaintiff's sick leave.  <u>Id.</u> 179.  Similarly, Andy
T. felt also felt as if management was keeping an eye on
Plaintiff.  Andy T. Dep. 141.

Inc., 770 F.2d 1251, 1255 (4th Cir. 1985).  "Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994).  None of the circumstances complained of by Plaintiff, see infra footnote 1, show the requisite level of intolerability.  Plaintiff's alleges, essentially, that after providing EEO testimony she was unfairly reprimanded and disciplined.  None of the events of which Plaintiff has complained would lead a reasonable person to conclude that they had no other option but to resign.

Plaintiff's underlying argument for constructive discharge seems to be that if she had remained on the job she would have been fired.  In her opposition, she notes, "It is, indeed remarkable, how accurate [Plaintiff's] instincts were. . . .  Had [Plaintiff] not left, clearly she was on a list to be forced out in any event one way or another."  Opp'n 52.  This Court has previously rejected similar arguments, stating:

> Plaintiff wants to rely on her subjective belief that she would be fired if she remained on the job in support of her right to resign and still be entitled to all the legal remedies afforded those who are fired in violation of the federal employment anti-discrimination statutes. This position runs counter to the law of this circuit, see, e.g., Bristow, 770 F.2d at 1254-55; Raley [v. Board of St. Mary's County Comm'rs, 752 F. Supp. 1272, 1279 (D. Md. 1990)], and is not in keeping with the limited purpose of the constructive discharge doctrine.

15

<u>Rankin</u>, 28 F. Supp. 2d at 343.  As such, this Court finds that Plaintiff has not put forth sufficient facts from which a fact finder at trial could find constructive discharge.

**IV.   CONCLUSION**

　　For the foregoing reasons, Defendant's Motion for Summary Judgment will be granted.  A separate order consistent with this memorandum will issue.


　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　William M. Nickerson
　　　　　　　　　　　　　　Senior United States District Judge


Dated: March 30, 2006.


16